UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIURA RUN, INC. | |
| Plaintiff, | |
| v. | CIVIL ACTION NO.: 25 Civ. 10425 (RA) (SLC) |
| TRIPLE PLAY PAY, INC., and NORTHAB, LLC, | **OPINION & ORDER** |
| Defendants. | |

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Plaintiff Miura Run, Inc. ("Miura") brings this breach of contract action against Defendants Triple Play Pay, Inc. ("TPP") and NorthAB, LLC ("North") alleging that TPP breached three merchant processing agreements, and that North engaged in tortious interference, conversion, was unjustly enriched, and breached its fiduciary duties. (Dkt. No. 1 (the "Complaint")). Before the Court is Miura's motion to strike ten of North's eleven affirmative defenses pursuant to Federal Rule of Civil Procedure 12(f). (Dkt. No. 29 (the "Motion")). North opposes the Motion. (Dkt. No. 34 (the "Opposition")). For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

### A. Factual Background

The following factual background is derived from the Complaint, the truth of which the Court presumes for purposes of analyzing the Motion. See Monterey Bay Mil. Housing, LLC v. Ambac Assurance Corp., No. 19 Civ. 9193 (PGG) (SLC), 2021 WL 4173929, at *6 (S.D.N.Y. Sept. 14, 2021). [1]

---

[1] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

### 1. The Parties

The parties in this action are "participants in the electronic payment-processing industry." (Dkt. No. 1 ¶ 7).  Miura is a sub-merchant that relies on TPP to process card transactions initiated by Miura's customers and promptly settle the funds.  (Id. ¶ 11).  TPP is a payment facilitator "responsible for underwriting its sub-merchants, processing their card transactions, and settling transaction proceeds to them."  (Id. ¶ 10).  North is a full-service provider and registered independent sales organization of FBB Bank, which receives money from card networks and pays it out to the merchants. (Id. ¶¶ 8–9).  North is responsible for onboarding payment facilitators and merchants, managing risk, and controlling the flow of settlement funds.  (Id. ¶ 9).  Miura's customers' payments flow through TPP, North, and FFB Bank before returning as settlement funds owed to Miura.  (Id. ¶ 11).

### 2. Alleged Breach of the Agreements

In August 2025, TPP and Miura entered into three "Sub-Merchant Processing Agreements" that required TPP, among other things, to "deposit the full amount of Miura's completed card transactions in Miura's sub-merchant accounts at the end of every business day." (Id. ¶¶ 13–14, Dkt. No. 1-1 (the "Agreements")).  Between September 8, 2025 and September 15, 2025, "customers of Miura's tradenames processed $510,158.70 in credit-card and debit-card transactions[,]" but TPP only settled $179,939.95 of those funds to Miura between September 9, 2025 and September 12, 2025.  (Dkt. No. 1 ¶¶ 22–23).  After September 12, 2025, TPP halted its settlement of funds with Miura without warning or notice.  (Id. ¶¶ 24–25).  When Miura reached out to TPP about the unsettled funds, Miura learned that FFB Bank was holding approximately $330,218.75 of Miura's funds.  (Id. ¶ 26).  As a result, Miura alleges against TPP:  (1) breach of

contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) breach of fiduciary duty.  (Id. ¶¶ 37–67).  Against North, Miura alleges:  (1) tortious interference with contract; (2) conversion; (3) breach of fiduciary duty; (4) aiding and abetting breach of fiduciary duty; and (5) unjust enrichment.  (Id. ¶¶ 68–99).

## B. Procedural Background

On December 16, 2025, Plaintiff filed the Complaint.  (Dkt. No. 1).  On February 9, 2026, North answered the Complaint, and on February 19, 2026, TPP answered the Complaint.  (Dkt. Nos. 22; 27).  North asserted the following affirmative defenses in its answer to the Complaint:

1. Plaintiff's Complaint fails to state a cause of action upon which relief may be granted [(the "First Defense")].
2. Plaintiff's claims are barred in whole or in part by the doctrines of waiver and estoppel [(the "Second Defense")].
3. Plaintiff's claims are barred in whole or in part by the doctrine of laches [(the "Third Defense")].
4. Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands [(the "Fourth Defense")].
5. Plaintiff's claims are barred in whole or in part as a result of its breach of the subject agreements [(the "Fifth Defense")].
6. Plaintiff's claims are barred in whole or in part as a result of its failure to mitigate its alleged damages [(the "Sixth Defense")].
7. Plaintiff lacks standing to maintain its claims [(the "Seventh Defense")].
8. Plaintiff's claims are barred in whole or in part because they are not yet ripe for adjudication [(the "Eighth Defense")].
9. Any alleged damages suffered by Plaintiff are the result of Plaintiff's own intentional wrongdoing, recklessness, or negligence [(the "Ninth Defense")].
10. Any alleged damages suffered by Plaintiff are barred or limited by setoff of chargeback liabilities [(the "Tenth Defense")].
11. This Court lacks personal jurisdiction over [North (the "Eleventh Defense")].

(Dkt. No. 22 at 9–10).  On March 3, 2026, Plaintiff filed the Motion, which asks the Court to strike the Second through Eleventh Defenses (the "Contested Defenses").  (Dkt. No. 29).  On March 17, 2026, North filed the Opposition.  (Dkt. No. 34).

### III.DISCUSSION

#### A.  Legal Standard

Federal Rule of Civil Procedure 12(f) provides that "a court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike affirmative defenses are "disfavored and the standard is a demanding one."  Lally v. Klick USA, Inc., No. 23 Civ. 10293 (MKV), 2025 WL 3280281, at *2 (S.D.N.Y. Nov. 25, 2025).  To prevail on a motion to strike affirmative defenses, a plaintiff must show that "(1) there is no question of fact which might allow the defense to succeed; (2) there is no question of law which might allow the defense to succeed; and (3) the plaintiff would be prejudiced          by          the          inclusion          of          the          defense." GEOMC Co., Ltd. v. Calmare Therapeutics Inc., 918 F.3d 92, 96 (2d Cir. 2019).

As to the first GEOMC factor, "the Second Circuit has explained that the plausibility standard set out in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2013) 'applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense'; as a result, a party must 'support [its] defenses with some factual allegations to make them plausible.'" Hintermaier v. Equifax Info. Servs. LLC, No. 24 Civ. 9697 (ALC) (RFT), 2025 WL 4377764, at *3 (S.D.N.Y. Nov. 26, 2025) (quoting GEOMC, 918 F.3d at 98–99)).  That said, the application of Twombly to affirmative defenses is "context-specific" and courts generally apply a lower plausibility threshold considering the timeline to answer a complaint and the availability to a defendant of facts underlying the affirmative defense.  See GEOMC, 918 F.3d at 98; Sec. & Exch. Comm'n v. Ripple Labs, Inc., No. 20 Civ. 10832 (AT) (SN), 2022 WL 748150, at *4 (S.D.N.Y. Mar. 11, 2022).  Even if an affirmative defense is asserted without accompanying factual allegations, a

court may still decline to strike it where "sufficient factual content is pled elsewhere to support the defense." Town & Country Linen Corp. v. Ingenious Designs LLC, No. 18 Civ. 5075 (LJL), 2020 WL 3472597, at *12 (S.D.N.Y. June 25, 2020).

With respect to the second GEOMC factor, the Second Circuit has explained that "an affirmative defense is improper and should be stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." GEOMC, 918 F.3d at 98. A motion to strike, however, "should not be used as an opportunity for the determination of disputed, substantial questions of law." Rich v. Miller, 634 F. Supp. 3d 66, 72 (S.D.N.Y. 2022).

Regarding the third GEOMC factor, the Second Circuit articulated that "a factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of litigation" and the Court should consider prejudice only when an affirmative defense is untimely. Id. at 98–99.

The party moving to strike bears the burden of establishing each element of the GEOMC test. See Dorce v. City of New York, No. 19 Civ. 2216 (JLR) (SLC), 2022 WL 16639141, at *2 (S.D.N.Y. Oct. 14, 2022), adopted by, 2022 WL 16637746 (S.D.N.Y. Nov. 2, 2022). The decision whether to grant a motion to strike an affirmative defense is within the district court's discretion. GEOMC, 918 F.3d at 99.

**B. Application**

In the Motion, Miura argues that the Contested Defenses are factually deficient under the standard set forth in GEOMC. (Dkt. No. 29 at 3–4). Miura also argues that the Seventh, Eighth, and Eleventh Defenses are not true affirmative defenses and that the remaining Contested Defenses are legally insufficient. (Dkt. No. 29 at 4–8). In the Opposition, North argues that the

Contested Defenses meet the "lower plausibility standard" articulated in GEOMC and that Miura has not shown any prejudice resulting from the Contested Defenses.  (Dkt. No. 34 at 3–5).  North also emphasizes that the Contested Defenses are nearly identical to TPP's affirmative defenses in its answer to the Complaint, yet Miura has not moved to strike any of TPP's affirmative defenses.  (Id. at 5).

### 1.  First GEOMC Factor

With respect to the first GEOMC factor, Miura argues that the Contested Defenses are factually deficient, boilerplate, and conclusory.  (Dkt. No. 29 at 3–4).  North responds that the Court should apply a lower plausibility threshold to all the Contested Defenses as set forth in GEOMC, and that the Contested Defenses meet that lower plausibility threshold.  (Dkt. No 34 at 3–4).

While we recognize that the Twombly plausibility standard for pleadings applies to the Contested Defenses, we "apply a lower plausibility threshold" to them, given the posture of this case and that North "has [had] less time to gather facts and craft a response."  Sec. & Exch. Comm'n, 2022 WL 16639141, at *4.  While we can imagine that even at this early stage, North might have some additional facts in its possession that it could have included in support of the Second through Tenth Defenses, taking a "context-specific" approach to the current pleadings, we cannot say that the Second through Tenth Defenses fail to meet that lower plausibility threshold.  GEOMC, 918 F.3d at 98.

With respect to the Eleventh Defense, notwithstanding the undisputed allegation in the Complaint that North is a Delaware limited liability company but is registered to do business in New York (Dkt. Nos. 1 ¶ 4; 22 ¶ 4), the Second Circuit has recognized that under New York law,

"a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process[.]" Chufen Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 499 (2d Cir. 2020). The extent to which North has sufficient contacts with New York to be subject to general personal jurisdiction under New York Civil Practice Law and Rules § 301, or specific jurisdiction under § 302, is a disputed issue that we cannot resolve on the face of the Complaint and the Answer and so shall require further factual development in discovery. See McDonough v. Cycling Sports Grp., Inc., 392 F. Supp. 3d 320, 328 (W.D.N.Y. 2019) (finding that unresolved factual questions concerning defendant's contacts with New York warranted discovery).

Accordingly, Miura has failed to meet its burden of establishing the first GEOMC factor for the Contested Defenses.

### 2. Second GEOMC Factor

Turning to the second GEOMC factor, we must determine whether any of the Contested Defenses indicate "a legally insufficient basis for precluding [Miura] from prevailing on [its] claims." GEOMC, 918 F.3d at 98.

### a. Second, Third, and Fourth Defenses: waiver, estoppel, laches and unclean hands

Miura argues that the Second, Third, and Fourth Defenses are legally improper, and specifically that that the Fourth Defense is "inherently equitable," which makes it invalid because Miura seeks only damages, not equitable remedies. (Dkt. No. 29 at 6–7). North does not address the legal sufficiency of any of the Contested Defenses. (See Dkt. No. 34).

The Second, Third, and Fourth Defenses are "equitable defenses to equitable claims." Silva v. Hornell Brewing Co., Inc., No. 20 Civ. 756 (ARR) (PK), 2020 WL 8079823, at *3 (E.D.N.Y.

7

Dec. 1, 2020); see Town & Country Linen Corp., 2020 WL 3472597, at *13 (stating that estoppel, unclean hands, laches, and waiver are equitable defenses).  Because Miura asserts a claim of unjust enrichment, which sounds in equity, North is not barred from asserting the Second, Third, and Fourth Defenses.  See Dorce, 2022 WL 16639141, at *4 (declining to strike laches, waiver, and estoppel defenses as unavailable where plaintiff alleged unjust enrichment claim).

Furthermore, we cannot say at this early stage in the litigation that the Second, Third, and Fourth Defenses are legally insufficient.  Waiver, estoppel, laches, and unclean hands are all defenses that turn on Miura's conduct, factual support for which is not "readily available before discovery has even started."  Jones v. Equifax Info. Servs. LLC, No. 25 Civ. 1535 (GHW) (SLC), 2025 WL 918466, at *8 (S.D.N.Y. Mar. 26, 2025); see Kelly v. 21 Grp. Inc., No. 22 Civ. 226 (MKB), 2023 WL 5831131, at *8 (E.D.N.Y. Sept. 8, 2023) (denying motion to strike laches and unclean hands defenses because "[a]t this early stage of the proceeding, it would be premature to" determine that "there are no facts" to support them).  For example, for the defense of laches, North must prove that it has "been prejudiced by [Miura's] unreasonable delay in bringing the action." Zuckerman v. Metro. Museum of Art, 928 F.3d 186, 193 (2d Cir. 2019).  We cannot prohibit North from asserting this defense as a matter of law because the facts concerning the timing of Miura's filing of this action remain unknown at this point.  See Jones, 2025 WL 918466, at *8 (denying motion to strike laches defense).

Accordingly, Miura has not met its burden of showing that the Second, Third, and Fourth Defenses are legally insufficient at this stage.

b. **Fifth, Sixth, Ninth, and Tenth Defenses: breach, failure to mitigate, own wrongdoing, and set-off**

While Miura argues that the Fifth, Sixth, Ninth, and Tenth Defenses are factually deficient, it does not argue their legal insufficiency. (Dkt. No. 29 at 7–8). North also does not address the legal sufficiency of these Defenses. (See Dkt. No. 34).

The Fifth, Sixth, Ninth, and Tenth Defenses are exactly the sort of affirmative defenses where factual support is not readily available at the pleading stage and will likely be revealed during discovery. See Tal Dagan MD PC v. Resolutions Billing & Consulting, Inc., No. 24 Civ. 632 (RA), 2024 WL 5089276, at *5 (S.D.N.Y. Dec. 12, 2024) (denying motion to strike failure to mitigate defense because factual basis to support such a defense was "likely not readily available to" defendant); Rich, 634 F. Supp. 3d at 75 (same). Because the facts surrounding the Fifth, Sixth, Ninth, and Tenth Defenses are yet unknown, "[t]he Court is simply not prepared to rule the[se] affirmative defenses legally deficient at the pleading stage." Lally, 2025 WL 3280281, at *3 (denying motion to strike affirmative defenses related to plaintiff's breach of employment contract because it could not "be said with the requisite legal certainty" at the pleading stage that it failed as a matter of law); see Trott v. Deutsche Bank AG, No. 20 Civ. 10299 (MKV), 2023 WL 6386899, at *5 (S.D.N.Y. Sept. 28, 2023) (denying motion to strike set-off affirmative defense where plaintiff "offered no basis for striking the alternative theor[y] of set-off").

Accordingly, Miura has not met its burden of showing that the Fifth, Sixth, Ninth, and Tenth Defenses are legally insufficient at this stage.

### c. Seventh and Eighth Defenses: standing and ripeness

Without any citation to authority, Miura argues that the Seventh and Eighth Defenses are not "true affirmative defenses" and are more appropriately raised in a motion under Federal Rule of Civil Procedure 12. (Dkt. No. 29 at 4–5). North does not address this argument in the Opposition. (See Dkt. No. 34).

As for the Seventh Defense, Miura is required to plead that it has standing to sue North by alleging that it is "in privity of contract" with North or is a third-party beneficiary of a contract with North. Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 49 (2d Cir. 2014). In the Complaint, Miura alleges that it entered into the Agreements "with TPP," which "owed Miura a number of duties in exchange for Miura processing its card transactions through TPP." (Dkt. No. 1 ¶ 13). The Complaint lacks, however, a similar allegation against North. (See generally id.) Thus, we cannot say at this point that the Seventh Defense is legally insufficient. See Hintermaier, 2025 WL 4377764, at *8 (recommending denial of motion to strike lack of standing affirmative defense where questions related to standing were essential to merits of the case). Similarly, to show that its claims are ripe, Miura must show that its injury is "actual or imminent" rather than "conjectural or hypothetical." See Nat'l Org. for Marriage, Inc. v. Walsh, 714 F. 3d 682, 688 (2d Cir. 2013) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). Because Miura alleges actual injury in the Complaint by way of loss of settled funds, there is nothing to indicate that the Eighth Defense is legally insufficient.

Accordingly, Miura has not met its burden of showing that the Seventh and Eighth Defenses are legally insufficient at this stage.

### d. **Eleventh Defense:  lack of personal jurisdiction**

Miura argues that the Eleventh Defense is undermined by the allegations in the Complaint, and that if North intends to challenge personal jurisdiction, it should do so through a motion pursuant to Federal Rule of Civil Procedure 12.  (Dkt. No. 29 at 5).  Again, North does not directly address this argument in the Opposition.  (See Dkt. No. 34).

In order for the Court to exercise personal jurisdiction over North, we must determine first whether New York's long arm statute permits the exercise of personal jurisdiction over North, and second, whether exercising personal jurisdiction over North comports with due process.  See JDH Unlimited Inc. v. APKZ Med. Inc., 808 F. Supp. 3d 547, 562 (E.D.N.Y. 2025).  New York's long-arm statute states:  "[a]s to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state . . ."  N.Y. C.P.L.R. § 302(a).  For the due process analysis, we must conduct a minimum-contacts inquiry and a reasonableness inquiry.  See Car-Freshner Corp. v. Just Funky LLC, No. 19 Civ. 289 (GTS) (ATB), 2019 WL 6270991, at *3 (N.D.N.Y. Nov. 25, 2019).  "To evaluate whether [North] has sufficient contacts within the forum state, the Court assesses 'the quality and nature of the [North's] contacts with the forum state under a totality of the circumstances test[.]'"  Id. (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007)).  The reasonableness inquiry involves an assessment of the following factors:

> (1) the burden that the exercise of jurisdiction will impose on [North]; (2) the interests of the forum state in adjudicating the case; (3) [Miura's] interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Car-Freshner, 2019 WL 6270991, at *3–4 (quoting Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010)).

For the reasons set forth above (see § III.B.1., supra), whether North is subject to general or specific jurisdiction is not apparent on the face of the pleadings and requires further factual development.  Accordingly, Miura has not met its burden of showing that the Eleventh Defense is legally insufficient at this stage.

### 3. Third GEOMC Factor

As to the third GEOMC factor, Miura argues that prejudice would result from the Contested Defenses because they "would force Miura to engage in discovery into any conceivable theory of waiver, estoppel, laches, unclean hands, own wrongdoing, and setoff that North might later try to articulate." (Dkt. No. 29 at 8).  North responds that Miura has not shown prejudice because the Contested Defenses will not expand the scope of discovery.  (Dkt. No. 34 at 4–5).

As stated above (see § III.A., supra), "the Second Circuit has held that '[a] factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation.'" Trott, 2023 WL 6386899, at *6 (quoting GEOMC, 918 F.3d at 98).  Because we have found that the Contested Defenses are factually and legally sufficient and there are no allegations that they are untimely, Miura has not met its burden of establishing the third GEOMC factor.

### IV. CONCLUSION

For the reasons set forth above, the Motion is DENIED.  The Clerk of the Court is respectfully directed to close Dkt. No. 29.


Dated:        New York, New York
              May 14, 2026


SO ORDERED.


_____
SARAH L. CAVE
United States Magistrate Judge